IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANDREW XAVIER SALERY, | ) |
| | ) |
| Petitioner, | ) |
| | ) CIVIL ACTION NO. |
| v. | ) 2:17-CV-419-ALB |
| | ) [WO] |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Andrew Xavier Salery's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. CIV Doc. No. 1.[1] Upon review, the court recommends that Salery's § 2255 motion be denied.

**I.  INTRODUCTION**

On October 21, 2015, Salery pled guilty to two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). After a sentencing hearing on January 28, 2016, the district court sentenced Salery to 90 months on each firearm-possession count and 60 months on the marijuana-distribution count, all terms to run concurrently.

---

[1] References to document numbers in this civil action, Civil Action No. 2:17-CV-419-ALB, are designated as "CIV Doc. No." References to document numbers in Salery's underlying criminal case, Case No. 2:14-CR-431-MHT, are designated as "CR Doc. No." Pinpoint citations are to the page of the electronically filed document in this court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

Salery appealed, arguing (1) he was not competent to enter his guilty plea and thus the district court erred in its competency determination; (2) the appeal waiver in his plea agreement was not voluntary and knowing; and (3) the district court erred in imposing a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A).

On March 8, 2017, the Eleventh Circuit issued an opinion affirming Salery's convictions and sentence. *See United States v. Salery*, 681 F. App'x 854 (11th Cir. 2017) (CIV Doc. No. 10-1).

On June 15, 2017, Salery, acting *pro se*, filed this § 2255 motion asserting the following claims:

> 1. His trial counsel was ineffective for failing to object to the district court's acceptance of his guilty plea when he was incompetent to stand trial or plead guilty.
>
> 2. His trial counsel was ineffective for failing to object to the district court's acceptance of his guilty plea when his plea was not knowing and voluntary.
>
> 3. His trial counsel was ineffective for failing to object to the district court's imposition of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

CIV Doc. No. 1 at 4–7; *see* CIV Doc. No. 2 at 3–5.

## II.   DISCUSSION

**A.   General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by

2

law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

B.  **Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish ineffective assistance of appellate counsel, a movant must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the

presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

> **1.  Counsel's Failure to Object to Acceptance of Guilty Plea When Salery Was Incompetent to Stand Trial or Plead Guilty**

Salery claims his trial counsel was ineffective for failing to object to the district court's acceptance of his guilty plea when, he says, he was incompetent to stand trial or plead guilty. CIV Doc. No. 1 at 4; CIV Doc. No. 2 at 3–4. The standard for competency to stand trial or plead guilty is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011) (quotation omitted).

After Salery was charged, his appointed counsel moved for a competency determination. CR Doc. No. 23. Dr. Robert Shaffer, a clinical psychologist, evaluated Salery in January 2015. Dr. Shaffer concluded Salery exhibited symptoms consistent with Schizoaffective Disorder, Major Neurocognitive Disorder, and Posttraumatic Stress Disorder, and possibly Borderline Personality Disorder and Attention Deficit Hyperactivity Disorder. CR Doc. No. 23-1 at 4. Dr. Shaffer also conducted neurological testing that showed impairment of Salery's frontal lobes. *Id*. at 3–4. Because of Dr. Shaffer's findings, the district court ordered the Bureau of Prisons to evaluate Salery's competency to stand trial. CR Doc. No. 26.

Dr. Tennille Warren-Phillips, a licensed psychologist, evaluated Salery's competence for the Bureau of Prisons over a two-month period. CR Doc. No. 36. She

administered several tests to Salery, one of which showed his IQ was 58. *Id.* at 14. However, she suspected Salery intentionally misrepresented himself as impaired because of validity indicators in the testing and because Salery's results did not align with his reported academic performance. *Id.* at 15–16. Dr. Warren-Phillips diagnosed Salery with severe Oppositional Defiant Disorder, Antisocial Personality Disorder, Borderline Personality Disorder, and severe Cannabis Use Disorder. *Id.* at 17–18. She concluded Salery was competent to stand trial because he "exhibited good verbal skills, memory, and related abilities necessary to consult effectively with counsel." *Id.* at 23. In her opinion, Salery did not appear to suffer from any mental issue that would make him unable "to understand the nature and consequences of the proceedings against him or to properly assist in his defense." *Id.*

The district court held a competency hearing on June 29, 2015. CR Doc. No. 148. Both Dr. Shaffer and Dr. Warren-Phillips testified and were cross-examined. By the time of the hearing, Dr. Shaffer had evaluated Salery again; diagnosed him with Schizoaffective Disorder; and concluded that he was not competent to stand trial. *Id.* at 11–12. He presented these findings to the court. Dr. Shaffer explained that Schizoaffective Disorder includes symptoms of schizophrenia, such as paranoia and hallucinations, and symptoms of an affective disorder, such as manic episodes and grandiosity. *Id.* at 11–13, 18–20, 48–53. His conclusions were based on two interviews with Salery, interviews with family members, and neuropsychological testing. *Id.* at 14, 30, 46, 54–55. His finding of incompetency relied on his observation that, as a result of this disorder, Salery has

difficulty trusting any source of factual information, making it difficult for him to gather information and weigh consequences. *Id.* at 24.

Dr. Warren-Phillips disagreed with Dr. Shaffer's conclusions. She explained that throughout the two months he was at the Bureau of Prisons facility, Salery did not present sustained depressive or manic episodes or a sustained period of schizophrenic symptoms, as would be required for diagnosis of Schizoaffective Disorder under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). CR Doc. No. 148 at 92–93. She also found Salery's paranoia was stress-related and transient and that, while he struggled to communicate effectively without becoming agitated, his anger could be mitigated through reasoned discussion. *Id.* at 96–99. Because he was receptive to dialogue and because his paranoia was, to that extent, flexible, Dr. Warren-Phillips concluded that Salery had sufficient ability to consult with counsel and assist in his defense. *Id*. at 99–100.

Based on the two doctors' reports and the evidence at the competency hearing, the district court found "Salery is competent and has the mental capacity to stand trial." CR Doc. No. 43 at 1. The court recognized Dr. Shaffer's conclusions, but credited Dr. Warren-Phillips's testimony over his because she evaluated Salery for a longer period of time and with more comprehensive testing.[2] *Id.* at 6.

---

[2] The district court later issued an order telling the parties to jointly craft a plan for Salery to receive "immediate and regular" mental-health treatment. CR Doc. No. 51. The court said although Salery was competent to proceed, it recognized the serious mental-health issues he suffered. *Id*. Two weeks after the district court entered its Opinion and Order finding Salery to be competent to stand trial, Stephen P. Ganter, a lawyer with the Federal Defender's Office who had been representing Salery to that point, was allowed to withdraw as Salery's counsel based on a breakdown in the attorney-client relationship. CR Doc. Nos.

On direct appeal, Salery claimed he was not competent to enter his guilty plea and that the district court erred in its competency determination. The Eleventh Circuit addressed this claim on the merits and found the district court did not clearly err in finding Salery to be competent. *See Salery*, 681 F. App'x at 857 (CIV Doc. No. 10-1 at 7). The Eleventh Circuit reasoned:

> Dr. Shaffer and Dr. Warren-Phillips conducted evaluations of Salery but reached different conclusions on his competency to stand trial. The district court held a full competency hearing where both experts testified and were subject to cross examination. Under this Court's precedent, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *[United States v.] Izquierdo*, 448 F.3d [1269,] at 1278 [(11th Cir. 2006)] (quotation omitted). And when the district court is "[f]aced with diametrically opposite expert testimony, [it] does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." *[United States v.] Bradley*, 644 F.3d [1213,] at 1268 [(11th Cir. 2011)] (quotation omitted). The district court here was faced with conflicting opinions and evaluations from two experts, and chose to credit Dr. Warren-Phillips over Dr. Shaffer because she evaluated Salery for a longer period of time and with more comprehensive testing. *See id*. And although the district court acknowledged Salery's mental-health issues, it specifically found he was still competent to proceed despite them.

*Salery*, 681 F. App'x at 857 (CIV Doc. No. 10-1 at 6–7).

The Eleventh Circuit's finding regarding Salery's competency is fatal to his argument that his trial counsel was ineffective for failing to object on competency grounds to the district court's acceptance of his guilty plea. Salery argues that his trial counsel should have objected to the district court's acceptance of his guilty plea on the grounds he

---

44–45. Attorney Bill Wayne Lewis, Jr. was then appointed as Salery's counsel, and Lewis represented Salery in all subsequent proceedings, including the guilty plea proceedings, sentencing, and appeal. CR Doc. Nos. 46 and 48.

was incompetent to stand trial or plead guilty, but the district court had determined Salery was competent after a full competency hearing.  And the Eleventh Circuit affirmed that ruling by the district court.  Because the appellate court found Salery's substantive competency claim lacked merit, any deficiencies of his trial counsel in failing to object on competency grounds in the district court cannot constitute ineffective assistance of counsel.[3]  *See Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  Salery is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. *Failure to Object to Acceptance of Involuntary Guilty Plea*

Salery claims his trial counsel was ineffective for failing to object to the district court's acceptance of his guilty plea when, he says, the plea was not knowing and voluntary.  CIV Doc. No. 1 at 7; CIV Doc. No. 2 at 4–5.  In October 2015 (after the district court found he was competent to stand trial), Salery agreed to plead guilty to two counts of possession of a firearm by a convicted felon and one count of possession of marijuana with intent to distribute.  In exchange, the Government dropped two other charges against Salery and agreed he would receive a sentence of no more than 10 years in prison.  Because Salery objected to his plea being taken by a magistrate judge, his guilty plea was taken by the district court.  *See* CIV. Doc. No. 7-2.

---

[3] Salery does not explain what more his trial counsel might have done to object to the competency issue. Trial counsel clearly raised the competency issue by moving for a competency determination in the district court, and the Eleventh Circuit clearly considered the competency issue to have been preserved for appellate review.

At Salery's change of plea hearing, before conducting the full guilty plea colloquy, the district court stated: "Based on the representations made to the Court and the Court's own personal observations of the defendant, the Court finds that the defendant is competent to enter a plea of guilty." CR Doc. No. 139 at 5. Under questioning by the court, Salery affirmed he had discussed his plea agreement with his counsel and he understood its terms. *Id*. at 5–7. Salery affirmed that he was satisfied with the advice given to him by counsel. *Id.* at 4. Salery also affirmed that his guilty plea had not been induced by any promises or assurances not in the plea agreement and that no one had done anything to threaten or coerce him into pleading guilty. *Id.* at 7. The court informed Salery of the elements of the charged offenses and the sentences he was subject to upon conviction (*id.* at 10–13, 18–19); informed him of the civil rights he would forfeit if he persisted in his guilty plea (*id*. at 13–14); explained how the Sentencing Guidelines would factor in the calculation of his sentence (*id*. at 14–15); and reviewed the constitutional guarantees he would enjoy if he proceeded to trial. (*id.* at 16–18). Salery affirmed that he understood these matters. At the conclusion of the plea colloquy, the district court found Salery was "fully capable and competent of entering an informed plea; the he [was] aware of the nature of the charges and the consequences of the plea, and that the plea of guilty as to all three counts [was] a knowing and voluntary plea supported by an independent basis in fact as to each of the essential elements of the offenses charged." *Id.* at 20.

At his sentencing hearing, Salery initially told the district court that, when his plea agreement was explained to him earlier by his counsel, he "wasn't understanding everything" and he "had some things that I wanted to object to in the plea agreement, but

I was told that nothing was going to be changed, so I was going to either sign it or going to be stuck going to trial." CIV Doc. No. 10-2 at 7. Salery did not elaborate on the "things [he] wanted to object to in the plea agreement." The district court granted Salery a brief recess to discuss matters with his counsel, and when the proceedings continued, Salery stated he had no other questions for the court. *Id*. at 8–9. At that point, the district court stated:

> Now, the Court did take your plea. If I remember correctly, it was a fairly extensive proceeding. I think the Court carefully went over everything with you, and the Court is again convicted that your plea was knowing and voluntary.

CIV Doc. No. 10-2 at 9.

Salery's written plea agreement contained an appeal/collateral act waiver under which he waived his rights to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. CR Doc. 87 and 6–7. On direct appeal, Salery argued that this part of his plea agreement should not be enforced because his waiver was not knowing and voluntary. The Eleventh Circuit agreed, finding that the district court did not clearly explain the nature and extent of the waiver at Salery's change of plea hearing; was contradictory in its questioning about the scope of Salery's appeal rights; and noted Salery's hesitancy about the waiver at the change of plea hearing. *Salery*, 681 F. App'x at 857–58 (CIV Doc. No. 10-1 at 8–9). Accordingly, the Eleventh Circuit held that the appeal/collateral attack waiver was not enforceable and severed it from Salery's plea deal. *Id*.

11

Salery now says his guilty plea plea was not knowing and voluntary, but he does not explain how it was not knowing and voluntary. *See* CIV Doc. No. 1 at 7; CIV Doc. No. 2 at 4–5. It does not appear that Salery, in making this claim, is referring to the waiver provision in the plea agreement, but even if he is, the unenforceability of this part of the plea agreement does not render Salery's guilty plea unknowing and involuntary.

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 of the Federal Rules of Criminal Procedure and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). Here, the district court confirmed during the change of plea colloquy that Salery's guilty plea was free from coercion and that Salery understood the nature of the charges and the consequences of his plea. Salery's representations during the plea proceeding and the findings by the district court when accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also Thompson v. Wainwright*, 787 F.2d 1447, 1460 (11th Cir. 1986) ("'[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'"). Indeed, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true[,]" *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), and, consequently, a defendant bears a "heavy burden" to show that his statements under oath were false, *United States v. Rogers*, 848 F .2d 166, 168 (11th Cir.1988) (citation omitted).

Here, there can be no doubt but that Salery's guilty plea of guilty is lawful because it was entered in accordance with applicable constitutional principles. Stated differently, the district court correctly determined that Salery's guilty plea was made knowingly and voluntarily and that his plea was supported by an independent basis in fact of the essential elements of the offenses. Consequently, Salery's trial counsel could not be ineffective for failing to object to the district court's acceptance of what Salery now claims was an involuntary guilty plea. Salery is entitled to no relief on this claim.

### 3. Failure to Object to § 2K2.1(b)(6)(B) Enhancement

Salery claims his trial counsel was ineffective for failing to object to the district court's imposition of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). CIV Doc. No. 1 at 6; CIV Doc. No. 2 at 4. Section 2K2.1(b)(6) of the Sentencing Guidelines provides, in pertinent part, that a defendant's offense level should be increased by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The district court applied the § 2K2.1(b)(6)(B) enhancement to Salery's sentence based on the evidence he possessed a firearm in connection with drug distribution (possession with intent to distribute drugs), a felony offense.

To the extent Salery maintains his trial counsel failed to object to imposition of the four-level enhancement under § 2K2.1(b)(6)(B), his claim is factually baseless. His trial counsel objected to, and argued at length at the sentencing hearing against, application of this enhancement. *See* CR Doc. No. 118 at 26; CIV Doc. No. 10-2 at 21–23. Faced with this reality, Salery shifts his claim to one that his counsel was ineffective for failing to

13

pursue this issue *on appeal*. CIV Doc. No. 12 at 2. Even so, the claim is unavailing because Salery establishes no basis on which the claim would have succeeded had it been pursued on appeal. There is no merit to Salery's suggestion that counsel should have argued on appeal that the enhancement did not apply because Salery was convicted only of possession with intent to distribute, a federal offense, and not a state offense. CIV Doc. No. 12 at 2. For the purposes of § 2K2.1(b)(6)(B) "another felony offense" includes both federal and state offenses. *See* § 2K2.1(b)(6) cmnt. n.14(C). Salery's claim of ineffective assistance of counsel—whether at trial or on appeal—fails, and Salery is entitled to no relief on this claim. Counsel cannot be ineffective for failing to raise a meritless claim. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

### III. CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Salery be DENIED and this case be DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **March 31, 2020**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. This Recommendation is not a final order and, therefore, is not appealable. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo

determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 17th day of March, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE